OLNEY FULLER *vs.* THERON HOWARD

CALEDONIA,
March,
1834.

A suit commenced before a justice of the peace, in which the plaintiff states his *ad damnum* over ten dollars, is appealable by either party.

To hold bail on *mesne process* where a debtor is arrested in a foreign county, where the writ is returnable, the return of *non est inventus* on the execution must be made by an officer of the county where said debtor had, when attached and when execution issued, a known and permanent residence.

This was a *scire facias* against the defendant as bail on *mesne process* in the plaintiff's favor against one Abram Minor, originally brought before a justice, from whose judgment an appeal was taken by the defendant to the county court. The *ad damnum* was set at twenty dollars. In the county court, the plaintiff, who was set up and resided in Danville, in the county of Caledonia, declared in substance that he took out a writ of attachment against Abram Minor, of Albany, in the county of Orleans, declaring in an action of book account, concluding to the damage of the plaintiff ten dollars, which writ was returnable at Danville, before Augustine Clarke, justice of the peace within and for said Caledonia county, on the 13th day of September, A. D. 1833, and was directed to the sheriff of Caledonia county, his deputy, &c., and delivered to John Currier, then a deputy sheriff of Caledonia county ; and upon said writ, at Danville aforesaid, the said John Currier arrested the body of the said Abram Minor, and that Theron Howard of Danville aforesaid became bail and surety for the said Minor, by endorsing his name with his own hand on the back of the said writ.— That the writ was returned to the justice on the said 13th day of September, 1833, at which time said Fuller recovered judgment in his favor against the said Minor for the sum of $5,23 damages and $1,44 costs, upon which he afterwards took out execution in time to hold bail, directed to the sheriff of Caledonia county, his deputy, &c., and delivered the said execution to John Currier, deputy sheriff as aforesaid, who duly returned a *non est* on the same.

To this declaration the defendant plead in bar " that at the time of the suing out of the plaintiff's writ, described in his aforesaid declaration against said Abram Minor, said Minor was, ever since has been, and still is a resident residing in Albany, in the county of Orleans and state of Vermont; and that at the time of the suing out of the plaintiff's execution, described in the aforesaid declaration, said Minor was, ever since has been,

71.

CALEDONIA,
March,
1834.
─────────
Fuller
vs.
Howard.

and still is a resident residing in the town of Albany and county of Orleans as aforesaid, and had not absconded or concealed himself, but was going at large within the precincts of the sheriff of said Orleans county, to wit, at said Albany : and this the said Theron Howard is ready to verify—Wherefore," &c.

To this plea the plaintiff demurred, and joinder by the defendant.

The court having decided the plea in bar insufficient, rendered judgment for plaintiff.

The defendant made his exceptions, which were allowed and certified.

There was also a motion to dismiss made by the plaintiff, on the ground that the court had not appellate jurisdiction of the cause.

*Charles Davis for plaintiff.*—The first question arising upon the plaintiff's motion to dismiss the appeal, is on the ground that the county court had not, by law, appellate jurisdiction of the action. It appears by the declaration before the justice, that the plaintiff's demand, which could not exceed the amount of the execution and judgment against the principal, was less than $10, although the *ad damnum* in the writ was $20. If there is but one fixed and distinct criterion of the right of appeal, and that equally applicable to both parties, independent of the pleadings ; or if, in other words, the statute has excluded the right of appeal in respect to both alike, when the matter in demand does not exceed ten dollars, and at the same time has indicated an unerring criterion to determine what is that matter in demand, then it results that nothing alleged in the writ, as to the damage sustained, can affect that criterion.

It is presumed no one will pretend that the plaintiff could vary his own rights by his own acts : if so, the statute is a nullity. He then could not have appealed in the present case : and if the defendant could, then the act of the plaintiff has so far substituted a new and totally different rule from that prescribed by law : thus making the same case appealable by one party and not by the other.

In the case of *Church* vs. *Vanduzer*, (4 Vt. R. 195,) the plaintiff endeavored to deprive the defendant of the right of appeal, upon an account of $10,67, when the statute clearly gives it, by claiming only $10 damage. This he could no more

CALEDONIA,
March,
1834.

Fuller
vs.
Howard.

do, than he could arrogate such right to himself upon an account under $10 by claiming $20 in the writ. We must frankly confess that we cannot reconcile the decision in *Bates vs. Downer* (4 Vt. R. 178) with the reasoning of Justice Thompson, in the case above, with the statute, nor with any sound principles of reasoning. It seems to us to involve doctrines which this court will, on mature consideration, hesitate to sanction. It destroys all harmony and uniformity in the law on the subject of jurisdiction, creating a shifting rule—one thing to-day and another to-morrow, according to the plaintiff's allegations in his writ—one thing to the plaintiff, and another to the defendant.

If the motion to dismiss should be determined against us, but one question remains—that is, whether a regular legal *non est inventus* return was made on the execution against the principal.

The statute is silent as to whom the execution shall be directed—there is nothing which intimates or implies that it must issue, in all cases, to the officer of the county where the debtor resides, without regard to the county in which he may have been arrested, or where he may happen to be temporarily. The whole provision is that execution must be taken out within thirty days, and put into the "hands of some officer proper to levy and serve the same," and a return "legally" or "regularly" made of *non est* within the time prescribed. The term '*proper officer*' refers to the description of persons authorised by law to levy and collect executions as distinguished from other officers. Bail, on being sued, (and the suit must of course be before the same court wherein judgment against the principal was rendered) are empowered to deliver him up in court any time before judgment against himself, pay costs and claim a discharge, in which case the court will direct an officer (of course an officer of the county where the court is holden) to take him into custody and keep him not exceeding twenty days, that he may be taken in execution. To be taken in execution then, the execution, in such case, must go to the officer of that county, wherever his residence may be. For this purpose, at least, this would be the regular course. Bail are also authorised before they become fixed and before the return day of the writ which they endorsed, on procuring a bail-piece and warrant, to apprehend the body of the principal, in whatever county he may be, and commit him to the keeper of the jail *either in the*

CALEDONIA,
March,
1834.

Fuller
vs.
Howard.

county in which he was arrested, or in that in which the process is pending, which in this case are the same, where he remains till he procures bail again to the satisfaction of the creditor or sheriff, or till fifteen days after judgment, when he is entitled to be discharged, unless the creditor has, in the meantime, charged him in execution.    To charge him in execution within that time, this execution must be given to an officer where he is committed.    If the bail here had seen fit to have proceeded under this authority, he had no power to have committed his principal to the jail in Orleans county, nor elsewhere, except in this county ; and if in such case the creditor must send his execution to Orleans county, before it would be returnable, the prisoner will have been discharged, and all remedy under the original arrest gone.—Rev. Laws, p. 66–8.    The statute clearly contemplates that the debtor shall be held for execution, and charged in execution in the county where he was arrested, or where the suit is pending.

The original debtor having procured bail here, is in contemplation of law supposed to remain in his custody : There is the same propriety and, perhaps, necessity of giving out the execution here, as if, instead of procuring bail, he had been at once committed to jail.    The bail has, at common law, ample power to secure the person of his principal, and the statute authority above to commit here, and here only, is in strict conformity to the idea that the principal is supposed to remain in custody here.—3 Bl. Com. 290, 292, n. 7.—5 T. R. 210, Darby vs. Bouchon.—2 Hen, Bl. 120, Sheers vs. Brooks et al.

It would seem then, as well upon common law principles as from the statute, that if, in order to charge bail, the execution must have any particular direction, it must be to the county in which the debtor was arrested, and in which he is supposed to remain in custody of his bail, or to have been committed by him.    The same question has been determined in Massachusetts under statute laws substantially like ours as to the liability of bail on mesne process.—7 Mass. R. 208, Brown vs. Wallace—13 do. 213, Crane vs. Shaw.    The court there say that it had long been a settled practice to direct executions, as was done in this case ; and the same remark to a great extent, if not universally, is applicable to this state.    We however do not wish to be understood as expressing a decisive opinion that the execution can regularly issue in no other manner.    We are

CALEDONIA,
*March,*
1834.

Fuller
*vs.*
Howard.

inclined to think that a *non est* return by an officer of Orleans county, even though the debtor might not in point of fact have returned there, would have been good, or indeed from any other county, if the execution were sent in good faith, from a belief that he had gone or was expected to go to any such county. A fraudulent return of course would not avail, and we believe no other test can be adopted. If he should remain where taken, and this unknown to the creditor, he would be surprised by a *non est* from any other county. Suppose between arrest and judgment he should have changed his residence, is the creditor at his own peril to ascertain this fact, and direct his execution thither? Suppose he is proved to be in some other county temporarily at the time of judgment and taking out execution, and the creditor in good faith with a desire to take his body, sends it thither, but before the officer has an opportunity to see him, he has left the state, or returned to his place of residence, would not this be good? Suppose another person residing here had been joined in the suit with Minor, and both had procured bail—service having been made on both here by the same officer—can there be any doubt that a regular *non est* return by the same officer as to both would charge the bail of both? If not, it would be impossible for the creditor, inasmuch as he cannot take out two executions at the same time, to avail himself of the advantages which the statute contemplates in respect to more than one. The taking bail as to all the debtors except one, would be a mere nullity—conferring no right upon the creditor, and creating no liability either as to the bail or officer. The system of the defendant's counsel is therefore uncountenanced by statute, and altogether impracticable.

In England, bail above, or bail to the action, which is always put in after appearance, answers to our bail on *mesne process.* They are there liable, unless the principal render himself or is surrendered in the county where the process issued, or pays the debt and costs. There must be a *non est* return upon a *capias ad satisfaciendum,* which need not be directed to any particular county, but seems generally to issue to the county in which the court sits, and where the appearance was. It is said that several may issue at the same time, and on *non est* upon any one the bail are charged. In some cases they are made returnable the next day.—1 Tidd's Pr. 220, 236, 242—2 do. 956, 996.

CALEDONIA,
March,
1834.

Fuller
vs.
Howard.

*Chandler & Howard, contra.*—It is contended that the plaintiff should have honestly endeavored to obtain satisfaction of the principal before being permitted to have recourse against the bail. The law requires that he should use due diligence to cause the body of the principal to be arrested.

Plaintiff did not put his execution into the hands of a proper officer within the meaning of the statute.—See p. 139.

The case involves a question of practice of considerable importance to debtors, viz: whether, being served with *mesne process* in a distant county, he shall be compelled to surrender himself, in that county, in discharge of his bail. This we contend would be a hardship on the part of the debtor which our statute does not contemplate.

It is an old-fashioned notion that the principal is, in contemplation of law, in the keeping of his bail. Our statute views him in no such light.

The agreement on the part of the bail is that his principal shall remain within the reach of process, and not abscond or conceal himself. And it is right and reasonable that the creditor should levy his execution upon the principal, if within its reach, instead of resorting, in the first instance, to his bail.

If the debtor is not found in the county in which he resides, the presumption is that he has absconded, or concealed himself; but no such presumption arises from the fact that he cannot be found in any other county in the state.

We attach no importance to the decisions of the courts in Massachusetts upon this question, it being one of practice merely; inasmuch as their decisions are founded upon a long course of practice which had there obtained, unsupported by any authorities or decided cases.

The opinion of the court was delivered by

MATTOCKS, J.—The first question presented is upon the motion to dismiss the action for want of jurisdiction in the county court; upon the ground that the action was not appealable from the justice.

There seems little doubt that the appeal was properly granted. The wording of the *ten dollar act*, as it is called, is different from the acts that give jurisdiction to justices. The latter is "debt or matter in demand"—the former is "where the sum demanded does not exceed ten dollars." What can this be but the *ad damnum?* and so it is believed to have been uniformly

CALEDONIA,
*March,*
1834.

Fuller
*vs.*
Howard.

construed. The plaintiff therefore has his election, when his debt or matter in demand is really under ten dollars, to make the case appealable or not, by the amount of his *ad damnum;* and if made appealable, it is so by both parties. Whether this wording of the act was intentional—the evil intended to be guarded against being the appealing of small cases by the defendant, the plaintiff being already sufficiently cautioned against appealing, by the after costs being restricted,—or from the uncertainty in many cases what the amount of the debt or matter in demand really is, or from accident, we know not. But it is evident that there is a clear difference in the expression of these statutes, the former, meaning what *ought* to be demanded, and this, what in fact *is* demanded.

The question raised by the declaration and plea is whether, when a defendant who resides in, and is set up of a town in one county, is attached and procures bail in another county, in which the writ is made returnable, a *non est,* made by an officer in such other county, is sufficient to charge the bail. And this question, so far as I know, has not been decided by this court. Some allusion has been made to the English practice, with a view to elucidate this point. But as a *ca. sa.* from Westminster Hall is usually directed to the sheriff of Westminster, and, when sent to other counties, suggestion is made that the defendant is "lurking" there ; and as "there is no attempt in point of fact to find the principal on the *ca. sa.;* but it is merely as a warning that the plaintiff means to proceed against the bail, or rather the *ca. sa.* against the principal, being left at the sheriff's office, is as notice to the bail that the plaintiff will proceed against the person, and it is incumbent on the bail to search whether any *ca. sa.* is left in the office."—4 Bur. 1360 :—and in King's Bench, after one *sci. fa.* with *scire feci* returned, or two *sci. fa.* with *nihil,* (1 Iustitutes, 272,) and no surrender, the bail is fixed :—it being regulated by rules of court, which vary in the different superior courts, and as the taking and charging the bail here is regulated by statute, there is not a sufficient analogy between the cases to aid in the decision. The decisions in Massachusetts have been cited. The case of *Brown* vs. *Wallace,* (7 Mass. R. 208) is a *per curiam* case, and merely says that "it had long been a settled practice to deliver the execution to the same officer who took the bail." This was quite sufficient to settle that case ; but as it was only a question

CALEDONIA,
March,
1834.

Fuller
vs.
Howard.

of practice, it is not of great weight here. And the other Massachusetts case is bottomed mainly upon their usage, with the addition that a *non est* by an officer in either county would be good. The operative clause in our statute is, " which execution shall be taken out within thirty days from the time final judgment shall be rendered, and put into the hands of some officer proper to levy and serve the same." Who then is an officer proper to serve the same? This is very indefinite, and quite open to construction. Does it mean any sheriff or other officer who has power to levy an execution? Then the creditor may send the execution to an officer in the most distant county in the state, where the defendant does not dwell—where the writ was not served, and where the court was not holden. Does it mean an officer in the county where the defendant resides, or where the writ was served, or where the judgment was rendered? (because he may be presumed to be in some of them.) And it being uncertain which, and the execution cannot well be sent to more than one, the plaintiff may elect which, and then the principal must watch in these counties, lest he should not be found on the execution. If an officer of the county where the writ was served, or where the principal lives, can make the *non est*, then the choice is with the creditor, and he might send it where it was most likely the defendant was not, in fact. If the creditor was bound to give it to an officer where he thought, or where it was most probable the principal was, then, there would be no certain rule, and the plaintiff might lose his debt by misjudging, or the plaintiff's intent would be often put in issue, if an officer of the same county where the arrest was made may and must have the execution. Then comes a train of inconveniences: the debtor must go to jail when arrested, in a county distant from home, and wait for the execution; or if he gets bail, he must be surrendered in court, which may be in a county in which he neither lives nor was arrested, or remain in custody of his bail, who may reside in still another county, or lurk in the county where arrested sixty days to hear from the execution, or go home and return at the peril of the bail, to the county where he was arrested, and if he can find what officer has the execution, present himself. But if a person, after being arrested in a distant county from his home, and giving bail should be attached in other counties and give bail, the difficulties would be so multiplied that it would be hopeless for him to attempt to clear all of the

CALEDONIA,
March,
1834.

Fuller
*vs.*
Howard.

bail. Many of these supposed cases are only *possible*—some are *probable*; and the case at bar, if decided for the plaintiff, would be certainly productive of this consequence.

As a debtor may not only be arrested, if found out of his county, on a writ or execution; but, in consequence of an arrest on a writ, if poor, he is bound to go or be carried to a distant county to be committed upon the execution, with no possible benefit that can be perceived to a creditor; and as New England is perhaps the only place where a person can be held to bail on a preliminary process, not only on a claim of debt without oath, but in all open or damage actions, in order to preserve the benefits of this singular privilege—the construction of the attachment statutes ought to be so benign to the defendants, as to make the system tolerable; as this numerous class includes the unfortunate, as well as the negligent and shuffling debtor. Arrests are often made upon claims that turn out to be groundless. Who then is a proper or most proper officer to whom the execution should be delivered? Most obviously an officer of the county where the defendant resides: at the debtor's house, if within the precincts of the officer, the law makes it his duty to repair and demand payment of an execution. At home a person is most likely to be found: there his property is most likely to be, which he has a right to turn out in lieu of his body; and if not at home, the call would indicate in whose hands the execution was, and enable the debtor to get information and present himself to the officer in time to save his bail; and if not, it would allow some ground for the officer's certificate of " diligent search" in his return of *non est*, which the officer in another county could not have, as there would be no particular place to look for the debtor. The sheriff would of course make a formal *non est* return, without looking any where. This would not be so fair notice to the bail as by the English practice, where he can always inquire at the sheriff's office. But here the sheriff knows nothing of execution delivered to his various deputies. In this particular it would not be as objectionable to deliver the execution to a constable who had served a writ on an inhabitant of another town in the same county; for in that case, there would usually be but one person to be inquired of whether the execution was given out. But in such a case, though scarcely distinguishable from this in prin-

CALEDONIA,
March,
1834.

Fuller
vs.
Howard.

ciple, it would be obvious that by the creditor's delivering the execution to a town instead of a county officer, his intention would be not to have the principal found on the execution.

In England, the bail stipulate in the triple alternative, that the defendant, if he is condemned in the suit, shall satisfy the plaintiff for his debt and cost, or that he shall surrender himself a prisoner, or that they will do it for him.—Jac. Law Dic.

Here the second condition seems to be, that the principal shall be found on the execution ; for withour a return on the execution that he cannot be found, the bail is not chargeable, and the right given by statute to the bail to surrender the principal on the originol suit, is the *privilege*, not the *duty* of the bail : therefore, the only essential condition or stipulation that the bail enters into—the non-performance of which is to make him liable—is that the defendant shall be found on the execution, not that he be surrendered : that is, that the plaintiff may have the defendant's body, if he wishes, on the execution. Why then should he not manifest this desire, as in other cases, by sending the execution where defendant resides ? Why not take the same ordinary means to arrest the defendant, as if there were no bail ? Can the statute mean less diligence ? But, here it is said that the principal is supposed to be in the custody of the bail : then, where the bail lives, would seem to be the proper place to send the execution. But though this supposition is but a legal fiction, and where the ancient authors say the bail has the principal as by a string, it must be to shew his right to control and hold the principal—not the actual possession of him : Else, why the right to take him on Sunday—break open houses, &c. ? Is it upon the principle of an escape ? However this may be, it cannot but be known that, in point of fact, no such custody commonly exists : and the statute seems not to have gone upon this ground ; for, as he need not be surrendered in court, if produced when called for, on this hypothesis why not require a demand of the bail like that of the receipt-man of property attached ? There is one provision of the statute which has been cited, and but one, that looks, at first view, as though the intention of the legislature was that the execution should go to the county where the arrest was made. It is the provision that the the bail may pray out a warrant upon his bail-piece against the principal, and the officer may commit him to jail either in the county in which he was arrested on the original process, or in the

CALEDONIA,
*March,*
1834.

Fuller
*vs.*
Howard.

county in which such process is pending. From this, it might seem that the act supposed these were the only counties where the principal could be arrested ; but the first part of the section somewhat impairs the force of this argument, where it says, " when the surety shall have occasion to take the body of the principal, to surrender him in court in discharge of, his bail, either on the original process, or upon the *scire facias,* or to secure him in prison in vacation, until the session of the court, in which he may be surrendered as aforesaid," then he may have a warrant. Now neither of these cases supposes he is kept to be found or surrendered on the execution, but in court.— Therefore the point in question was not probably in the mind of him that drew the act ; and the county where the original action was brought, was evidently the only one in which he could be surrendered in that action, and why the other county was mentioned, is not evident : it might have been upon the supposition that the bail would probably live in the county where the arrest was made, and upon the general law that suits must be brought in the county where one of the parties live, the *scire facias* must be brought in one of the two counties named, without it having occurred at the moment, that *scire facias* is a judicial writ, and must be brought where the original record remains. But at most, this part of the statute has rather a remote and but inferable bearing upon the question. What the general practice has been in this state, we are not fully apprised ; if we were, and it had been long and uniform, it would be of great weight in a case of this sort. Perhaps it has not been uniform. But it is believed to have been the most common to send the execution where the defendant resides, as set up in the writ. Therefore, to hold so now, will not be overturning any settled practice : and the wording of the act, to say the least, not being against such a construction, we believe the true construction of the law is, that the *non est* should, in this case, have been made by an officer in Orleans county, where the principal at, and after the arrest, resided, and was open and at large, during the whole life of the execution, and of course could have been taken thereon.

Judgment of the county court reversed.

Judge COLLAMER dissenting.